FILED

MAR 0 4 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___MM___ DEP CLK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| CAPRICIA HINTON, | ) ) ) | Civil Action No.: 5:26-cv-00134-M |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) ) | |
| WAKEMED HEALTH & HOSPITALS, INC., | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Capricia Hinton, proceeding pro se, brings this Complaint against Defendant WakeMed Health & Hospitals, Inc. ("WakeMed" or "Defendant") for employment discrimination and retaliation. In support thereof, Plaintiff alleges as follows:

## INTRODUCTION

1. This is an action for employment discrimination and retaliation brought by Plaintiff Capricia Hinton against her former employer, WakeMed Health & Hospitals, Inc. ("WakeMed" or "Defendant").

2. Plaintiff, a military veteran and registered nurse with medically diagnosed anxiety and Post-Traumatic Stress Disorder ("PTSD"), was subjected to a continuous pattern of retaliation and discrimination after she engaged in activities protected by federal law.

3. After Plaintiff requested and received a reasonable accommodation under the Americans with Disabilities Act ("ADA"), used intermittent leave under the Family and Medical Leave Act ("FMLA"), and repeatedly complained to management and human resources about unequal treatment and improper staffing practices, Defendant responded with escalating adverse actions.

4. Plaintiff seeks declaratory relief, back pay, front pay, compensatory damages for emotional distress, punitive damages, costs, and such other relief as the Court deems just and proper, to remedy Defendant's violations of the ADA, the FMLA, and Title VII of the Civil Rights Act of 1964.

## JURISDICTION AND VENUE

5. This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. § 1981.

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Wake County, North Carolina, and Defendant conducts business in this district.

## PARTIES

8. Plaintiff Capricia Hinton is an adult individual formerly employed by Defendant in Wake County, North Carolina.

9. Defendant WakeMed Health & Hospitals, Inc. is an employer within the meaning of Title VII and the ADA.

## FACTUAL ALLEGATIONS

10. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

11. The EEOC issued Plaintiff a Notice of Right to Sue on or about December 19, 2025, hereby attached as Exhibit A.

12. Plaintiff files this action within ninety (90) days of receipt of the Notice of Right to Sue.

13. Plaintiff was employed by Defendant as a registered nurse at its Raleigh campus. She performed her job duties competently and satisfactorily.

14. Plaintiff has medically recognized diagnoses of anxiety and Post-Traumatic Stress Disorder ("PTSD"), which substantially limit one or more major life activities and constitute disabilities under the ADA.

15. Plaintiff's disabilities are connected to her status as a military veteran. Defendant was aware of Plaintiff's disabilities and military status.

16. Plaintiff engaged in numerous protected activities, of which management (Bridget Hall), HR (William Avery), and her supervisor (Jason Dehn) were aware.

17. On June 13, 2025, submitting a request for a reasonable accommodation under the ADA, which was approved on June 16, 2025, and reviewed with HR and management on June 18-19, 2025.

18. During discussions regarding potential additional accommodations, Manager Bridget Hall stated, "Why do you need those accommodations now when you didn't before?"

19. Plaintiff contemporaneously documented this statement via email to preserve the record.

20. The questioning of the timing and necessity of disability-related accommodations reflects skepticism toward Plaintiff's protected ADA rights and contributed to a chilling effect on Plaintiff's exercise of those rights.

21. Rather than engaging in a good-faith interactive process, Defendant responded with scrutiny and resistance, which escalated following Plaintiff's protected activity.

22. Using intermittent FMLA leave, including on June 18-19, 2025, and on August 2, 2025. On June 3, 2025, and throughout June, July, and August, making internal complaints to HR and management requesting investigation into unequal treatment, and repeatedly reporting improper down staffing and denial of hours.

23. On October 27, 2025, reporting that she was being discouraged from completing patient safety incident reports. On October 28, 2025, filing a formal complaint with Defendant's internal Compliance Line (Complaint #971927749701).

24. Following her protected activities, Defendant subjected Plaintiff to a series of adverse actions, establishing a clear pattern of retaliation. On May 29, 2025, Plaintiff was informed by management via email that her overtime approval was explicitly tied to her FMLA usage, stating: "Your overtime will not be approved or denied based on your FMLA usage until closer to the shift."

25. On June 2, 2025, immediately after Plaintiff complained about unfair treatment, her future overtime shifts were suddenly denied, while the same shifts were approved for other staff.

26. On June 21 and August 2, 2025, Plaintiff was improperly "downstaffed" (sent home early) despite not being in overtime and despite not having met her fulltime hours. On June 23, 2025, a manager confirmed this was improper, yet Plaintiff was forced to use her accrued PTO to cover the lost wages, depleting the PTO she needed for her FMLA leave.

27. On June 25, 2025, a new education was added last-minute to a staff meeting immediately following Plaintiff's June 10 complaint, suggesting targeted enforcement.

28. On August 2, 2025, Plaintiff used approved intermittent FMLA leave in the morning, notifying her charge nurse that she would arrive by 11:00 AM. Plaintiff arrived at 10:58 AM. Despite this, Manager Bridget Hall attempted to issue a tardy occurrence. Plaintiff escalated this to HR. On August 18, 2025, Ms. Hall confirmed in an email that she could not issue the occurrence. This constitutes unlawful FMLA interference.

29. On August 14, 2025, Plaintiff was prevented from attending a Unit Council meeting, an activity tied to her annual performance evaluation. Despite waiting

25 minutes to be admitted to the virtual meeting and providing proof of her attempt on August 22, 2025, Defendant offered no correction, make-up opportunity, or acknowledgment.

30. On October 27, 2025, Plaintiff was told that staff "felt uncomfortable" with her submitting incident reports, a form of protected activity under federal law. She was informed that staff "have seen the incident report form up." This coercive statement was intended to chill future protected reporting.

31. On October 28, 2025, the very same day Plaintiff filed her internal Compliance Line complaint, managers Bridget Hall and Jason Dehn conducted a highly detailed, targeted audit of her patient charts. On November 1, 2025, just three days after the targeted chart audit and shortly after her other protected activities, Plaintiff was terminated.

32. On or about October 27, 2025, Plaintiff was informed that coworkers felt "uncomfortable" with her submitting incident reports. Defendant did not identify any specific misconduct, policy violation, disruptive behavior, or inappropriate communication.

33. The only conduct referenced was Plaintiff's submission of patient safety and incident reports—an activity protected under federal anti-retaliation provisions and consistent with her professional nursing obligations.

34. Defendant's reliance on vague coworker "discomfort," without objective criteria or documented performance deficiencies, further demonstrates retaliatory and pretextual motive.

35. After Plaintiff raised concerns and engaged in protected reporting activity, Defendant referenced a general workplace conduct policy to justify scrutiny and

discipline. However, Defendant failed to identify any specific provision Plaintiff violated, any documented warning prior to escalation, or any comparable enforcement of the same policy against similarly situated employees.

36. Upon information and belief, the cited policy was selectively applied to Plaintiff only after she engaged in protected activity and was not consistently enforced against other employees who engaged in comparable conduct.

37. The post hoc reliance on generalized policy language, without objective misconduct, supports an inference of retaliatory and discriminatory pretext.

38. The termination paperwork included false statements, including a fabricated comment about her "military status" that Plaintiff did not make. Plaintiff's military status is directly connected to her ADA and FMLA needs.

39. The termination documentation relied on subjective and inaccurate characterizations of Plaintiff's behavior, such as "yelling" and being "disruptive" during a Behavioral Emergency Response Team call on October 3, 2025, without considering Plaintiff's known disabilities or conducting an individualized assessment.

40. Defendant made no effort to engage in the interactive process to determine if Plaintiff's known disabilities (anxiety and PTSD) manifested in ways that could be reasonably accommodated during high-stress events like the October 3rd incident. Instead, it used the incident and subsequent documentation issues as a pretext for discrimination and retaliation.

## CLAIMS FOR RELIEF

### COUNT I – Disability Discrimination (ADA)

31. Plaintiff incorporates by reference all preceding paragraphs.

32. Plaintiff is a qualified individual with a disability within the meaning of the ADA, having medically recognized diagnoses of anxiety and PTSD that substantially limit one or more major life activities. Defendant was aware of Plaintiff's disabilities.

33. Defendant discriminated against Plaintiff on the basis of her disability by subjecting her to heightened scrutiny, adverse employment actions, and ultimately terminating her employment because of her disability or because it regarded her as disabled.

34. It was held that a plaintiff may establish discrimination by demonstrating that the employer's proffered nondiscriminatory reason for termination is pretextual and that disability was the real reason for the adverse action. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 60 (4th Cir. 1995).

35. Defendant's proffered reasons for termination are pretextual, as evidenced by the fabricated comment regarding military status, the subjective characterizations of behavior, and the failure to consider Plaintiff's known disabilities.

### COUNT II – Failure to Engage in the Interactive Process (ADA)

36. Plaintiff incorporates by reference all preceding paragraphs.

37. An employer's failure to engage in the interactive process in good faith, when a reasonable accommodation would have been possible, constitutes a violation of the ADA. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346-47 (4th Cir. 2013).

38. Despite knowledge of Plaintiff's disabilities and their potential impact on her work, Defendant failed to engage in a good-faith interactive process to identify and implement reasonable accommodations.

39. Defendant's response to Plaintiff's consideration of additional accommodations demonstrates a failure to engage in the interactive process in good faith and reflects improper reliance on prior performance to question present disability-related needs.

40. Specifically, following the October 3, 2025 incident, Defendant made no effort to determine whether Plaintiff's known disabilities manifested during high stress situations and whether reasonable support or accommodations were appropriate before resorting to discipline and termination.

## COUNT III – Retaliation (ADA)

40. Plaintiff incorporates by reference all preceding paragraphs.

41. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodation on June 13, 2025.

42. Defendant retaliated against Plaintiff for this protected activity by subjecting her to a series of adverse actions, including denial of overtime, improper down staffing, forced use of PTO, targeted scrutiny, and termination.

43. Temporal proximity between protected activity and adverse action can establish a prima facie case of retaliation, and that once established, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001). Therefore,

a close temporal proximity between her protected activity and these adverse actions demonstrates a causal connection.

## COUNT IV – Retaliation (Title VII)

44. Plaintiff incorporates by reference all preceding paragraphs.

45. Plaintiff engaged in protected activity under Title VII by opposing practices she reasonably believed to be unlawful, including making internal complaints about unequal treatment on June 3, 2025, and throughout her employment.

46. A plaintiff establishes a prima facie case of Title VII retaliation by showing: (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).

47. Defendant retaliated against Plaintiff for this protected opposition by subjecting her to adverse actions, including denial of overtime, improper down staffing, exclusion from work activities, and termination.

## COUNT V – Hostile Work Environment (Title VII)

48. Plaintiff incorporates by reference all preceding paragraphs.

49. Defendant, through its agents and employees, subjected Plaintiff to severe and pervasive retaliatory conduct, including constant scrutiny, exclusion from work activities, unwarranted discipline, and discouragement from protected reporting.

50. This conduct altered the conditions of Plaintiff's employment and created an abusive work environment.

51. A hostile work environment claim based on retaliation requires a showing that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). The harassment was based on Plaintiff's engagement in protected activity under the ADA, FMLA, and Title VII.

52. The allegation that coworkers were "uncomfortable" arose in direct temporal proximity to Plaintiff's protected reporting activity and was used as a subjective justification to discourage further reporting and support termination.

## DAMAGES

52. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, including back pay, front pay, and other compensation.

53. Plaintiff has suffered emotional distress, humiliation, embarrassment, and mental anguish.

54. Plaintiff has suffered reputational harm.

55. Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights, warranting an award of punitive damages.

## JURY DEMAND

56. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in her favor and all appropriate relief.

a. A declaratory judgment that the actions of Defendant complained of herein violated Plaintiff's rights under the ADA, FMLA, and Title VII;

b. An award of back pay with prejudgment interest, front pay in lieu of reinstatement, and all other compensation and benefits lost as a result of the unlawful practices complained of herein;

c. An award of compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

d. An award of punitive damages to punish Defendant for its malicious and reckless conduct;

e. An award of reasonable costs and disbursements of this action; and

f. Such other and further relief as the Court may deem just and proper.

Dated ___4___ day of ___March___, 2026

Respectfully submitted,

**Capricia Hinton**
**Plaintiff, Pro Se**